IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Darlene Phillips, | ) | C/A No.: 1:13-3321-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

On October 20, 2010, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on August 23, 2010. Tr. at 156–61, 162–63. Her applications

were denied initially and upon reconsideration. Tr. at 81–86, 89–91, 92–94. On February 23, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Peggy McFadden-Elmore. Tr. at 36–76 (Hr'g Tr.). The ALJ issued an unfavorable decision on June 13, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 17–35. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–12. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 27, 2013. [ECF No. 1].

      B.      Plaintiff's Background and Medical History

            1.      Background

Plaintiff was 41 years old at the time of the hearing. Tr. at 41. She completed high school. Tr. at 43. Her past relevant work ("PRW") was as a school janitor, a cook, a kitchen helper, a cashier, and a produce clerk. Tr. at 67. She alleges she has been unable to work since August 23, 2010. Tr. at 41.

            2.      Medical History

On August 23, 2010, Plaintiff presented for urgent care treatment at Lexington Medical Center Swansea. Tr. at 244. She complained of lower left abdominal pain that was exacerbated by lifting, straining, and walking. *Id.* Her examination was normal except for complaints of pain over her rectus muscles. *Id.* She was diagnosed with an abdominal wall strain and hypertension and prescribed Flexeril, Lortab, and Hydrochlorothiazide ("HCTZ"). *Id.*

Plaintiff presented to Clarence E. Coker, III, M.D., for an initial evaluation on September 16, 2010. Tr. at 258. She reported pelvic pain and right low back pain. *Id.* She indicated her pain was worsened by sitting and lifting, improved slightly by standing, and improved significantly by lying down. *Id.* Plaintiff stated her pain started on her right side, radiated down her right leg, and traveled into the lateral aspect of her right foot. *Id.* Dr. Coker noted that Plaintiff was uncomfortable and was standing up and bending at the waist with obvious excessive lordosis. *Id.* Her sitting straight-leg raise ("SLR") test was positive and she was unable to lie down due to the pain. *Id.* She had excessively brisk deep tendon reflexes and her lumbar spine showed some angulation of L5 on S1. *Id.* Dr. Coker prescribed Prednisone, limited Plaintiff to lifting no more than five pounds, and referred her for an MRI. *Id.*

Plaintiff followed up with Dr. Coker on September 21, 2010. *Id.* She reported some improvement, but noted that she was still experiencing pain in her right foot. *Id.* Dr. Coker observed positive SLR on the right and antalgic gait, but noted the SLR was negative on the left and that Plaintiff had normal deep-tendon reflexes. *Id.* Dr. Coker diagnosed sciatica with some improvement on steroids. *Id.*

Plaintiff continued to report low back pain to Dr. Coker on September 30, 2010. Tr. at 257. Plaintiff denied experiencing paresthesias or numbness, but indicated Lortab was not working as well and that she had been unable to work because of her pain. *Id.* Dr. Coker observed a positive SLR on the right and a borderline SLR on the left, antalgic gait, and normal deep-tendon reflexes. *Id.* Dr. Coker prescribed Prednisone and instructed Plaintiff to follow up after her MRI. *Id.*

An MRI on October 1, 2010, indicated minimal lumbar degenerative changes, mostly manifested by some very mild facet arthropathy in the lower lumbar levels with no focal disc herniation, central canal stenosis, or significant neural foraminal narrowing. Tr. at 253.

On October 27, 2010, Plaintiff followed up with Dr. Coker regarding her low back pain. Tr. at 257. She reported her pain was worsened by standing and improved with rest and sitting. *Id.* SLR test was more positive on the right than on the left. *Id.* Plaintiff had mildly decreased deep-tendon reflexes in her knees. *Id.* Dr. Coker observed some tenderness over Plaintiff's right sacroiliac ("SI") joint. *Id.* He noted that Plaintiff's MRI report revealed no significant abnormalities, but that she may have some mild facet arthropathy. *Id.*

Plaintiff followed up with Dr. Coker on November 18, 2010, and complained of right shoulder pain, low back pain, and neck stiffness and tightness. Tr. at 261. She indicated she experienced pain with ambulation and was unable to walk very much. *Id.* Dr. Coker observed good range of motion of Plaintiff's neck, but some paraspinous muscular tenderness and some trapezius ridge tenderness. *Id.* He noted positive Hawkins and Neer impingement signs on her right, but no evidence of a rotator cuff tear. *Id.* He diagnosed right shoulder bursitis and administered a steroid injection. *Id.*

On December 14, 2010, Plaintiff followed up with Dr. Coker regarding pain in her right leg, on the right side of her low back, and in her right arm, as well as weakness in the third and fourth digits of her right hand. *Id.* Plaintiff reported her right shoulder pain had improved with injection. *Id.*

Plaintiff followed up with Dr. Coker on January 13, 2011, and reported ongoing low back pain radiating down her right leg. Tr. at 273. Dr. Coker noted that Plaintiff "typically stands more than she sits" and that she complained that her pain was worsened by sitting. *Id.* SLR was positive on the right in both the sitting and supine positions and positive on the left only in the supine position. *Id.* Dr. Coker observed tenderness on palpation of the SI joints bilaterally, but worse on the right. *Id.* He assessed sciatica and sacroiliitis and administered a right SI joint injection. *Id.*

State agency consultant Warren F. Holland, M.D., completed a physical residual functional capacity assessment on January 18, 2011, in which he indicated that Plaintiff was limited as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited; occasionally climb ramps/stairs, stoop, and crouch; frequently balance, kneel, and crawl; and never climb ladders/ropes/scaffolds. Tr. at 262–69.

Plaintiff followed up with Dr. Coker on January 28, 2011, and complained of low back pain with severe lordosis and angulation of the lumbar spine. Tr. at 273. She indicated she was experiencing pain with standing and with sitting, and that her pain was improved by lying on her side with her knees pulled up. *Id.* She indicated her pain was only improved with Hydrocodone[1] 10 mg that caused drowsiness. *Id.* Dr. Coker observed

---

[1] According to the U.S. National Library of Medicine, which is maintained by the National Institutes of Health, Hydrocodone is only available in combination with other ingredients and one of the brand name combination medications that contains

that Plaintiff was quite uncomfortable in the sitting position. *Id.* He also observed positive SLR test on the left more than the right, but normal deep-tendon reflexes. *Id.*

On February 15, 2011, Plaintiff complained to Dr. Coker of severe low back and hip pain. Tr. at 272. Dr. Coker noted tenderness over her SI joints. *Id.* He indicated that Plaintiff was in a significant amount of pain, but was in no acute distress. *Id.* SLR test was negative and Plaintiff had normal deep-tendon reflexes and normal sensation. *Id.* Dr. Coker noted "very marked lordosis of the lumbar spine, but no evidence of rotoscoliosis." *Id.* He indicated that Plaintiff may have functional spinal stenosis with severe pain with ambulation. *Id.* He referred her to pain management and neurosurgery and prescribed a rolling walker, Vicodin, and Tramadol. *Id.*

Plaintiff followed up with Dr. Coker on March 29, 2011, regarding low back pain. Tr. at 276. She complained of a little swelling in her right leg, but Dr. Coker noted that it was not significantly different from the left. *Id.* Plaintiff reported pain with sitting, standing, and walking, but Dr. Coker noted that she seemed to be most comfortable with standing. *Id.* She informed Dr. Coker that she had been unable to obtain a rolling walker because of an insurance issue. *Id.* Dr. Coker observed Plaintiff had "pretty bad lordosis of the lumbar spine," was unable to sit for any length of time, and she was flexed between 30 and 45 degrees at the hip. *Id.* However, she was able to ambulate "without significant

---

Hydrocodone is Lortab. AHFS Consumer Medication Information [Internet]. Bethesda (MD): American Society of Health-System Pharmacists, Inc., ©2014. Hydrocodone; [revised 2013 May 15; cited 2014 October 17]. Available from: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html. A court may take judicial notice of factual information located in postings on government websites. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may "properly take judicial notice of matters of public record"). Lortab had been prescribed to Plaintiff at a previous visit.

antalgia." *Id.* Plaintiff reported she inadvertently dropped her pain medication in the toilet. *Id.* Dr. Coker agreed to authorize refill of her medications, but indicated "I will not provide any further refills for any other accidents like this." *Id.* He prescribed Vicodin, Neurontin, and Mobic. *Id.* He also noted Plaintiff had seen the neurosurgeon, but the neurosurgeon had referred her for legal counseling regarding insurance coverage. *Id.* He administered a steroid injection. *Id.*

On April 19, 2011, Plaintiff complained to Dr. Coker's associate, James Kerby, P.A., that she was getting no relief from Neurontin and was experiencing acute pain in her right shoulder blade. Tr. at 298. Mr. Kerby observed Plaintiff to be bent over in antalgic posture in her lumbar region and holding her arm in an antalgic posture. *Id.* He noted Plaintiff had subjective tenderness to palpation diffusely along the scapula, and range-of-motion pain with scapular abduction. *Id.* He administered a Toradol injection and prescribed Toradol for home use. *Id.*

Plaintiff presented to Lexington Medical Center Swansea on May 29, 2011, with complaints of back and hip pain. Tr. at 286. She was ambulating with a cane and was somewhat bent over. Tr. at 287. Wesley Shuler, M.D., observed some tenderness on palpation to Plaintiff's right sacroiliac area and painful SLR on the right. *Id.* She was given Demerol and Phenergan intravenously and prescribed Lortab and Prednisone. *Id.*

Plaintiff again followed up with Mr. Kerby on July 11, 2011, and requested Vicodin for back pain. *Id.* Mr. Kerby noted he had advised Plaintiff to follow up with Dr. Coker when he saw her in April and prescribed 12 Vicodin. *Id.*

Plaintiff followed up with Dr. Coker on July 15, 2011, and complained she was continuing to experience low back and right leg pain and that her right leg pain had been so intense that she recently wet herself. *Id.* She stated she had pain when sitting, standing, and lying down, and that standing was the most comfortable position for her. *Id.* Dr. Coker indicated that SLR was markedly positive on the right and that Plaintiff was mildly hyperreflexic in the right knee and ankle. *Id.* He again referred Plaintiff for pain management and neurosurgery consultations and administered an epidural injection. *Id.*

State agency medical consultant Lindsey Crumlin completed a physical residual functional capacity assessment on May 4, 2011, in which she indicated that Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; push and/or pull unlimited; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and avoid all exposure to hazards. Tr. at 278–85.

Plaintiff presented to Lexington Medical Center Swansea on September 2, 2011, complaining of severe back pain after she tried to lift a watermelon. Tr. at 293. Pamela Levi, N.P., observed tenderness over Plaintiff's lumbar spine and paraspinal muscles. *Id.* However, her strength and sensation were intact, her reflexes were normal, and her SLR test was negative. *Id.* Dr. Levi prescribed Flexeril for spasms, but indicated that Plaintiff should take pain medication from her home supply. *Id.*

Plaintiff followed up with Dr. Coker on September 9, 2011, and complained her low back pain was only moderately controlled with Percocet 10/650, four times daily. Tr. at 297. Dr. Coker indicated Plaintiff had not been seen by a neurosurgeon or by a pain management physician. *Id.* He observed Plaintiff had severe lordosis of the lumbar spine with tenderness over the SI joints bilaterally and ambulated with a walker, but had normal dorsiflexion and plantar flexion. *Id.*

Plaintiff followed up with Dr. Coker on November 2, 2011, who noted Plaintiff had been working with a Workers' Compensation attorney, but had not been seen by a neurosurgeon or pain management specialist. Tr. at 305. Dr. Coker noted Plaintiff was no longer taking Percocet and was getting adequate control of pain with Mobic and Lyrica. *Id.*

On February 8, 2012, Plaintiff informed Dr. Coker that her pain continued to worsen and was not controlled by her medications. Tr. at 304. She indicated she did not have insurance and was unable to see a pain management physician or a spinal surgeon. *Id.* She reported that Percocet caused constipation and made her feel "a little bit goofy and sleepy." *Id.* Dr. Coker noted Plaintiff appeared to be in pain consistent with the level documented. *Id.* He observed bilateral SI paraspinous muscular tenderness, bilateral SI tenderness, positive SLR, and hyperreflexia of the deep tendon reflexes of the knee bilaterally. *Id.* Dr. Coker refilled Plaintiff's medications and prescribed Amlodipine for uncontrolled hypertension. *Id.*

On April 11, 2012, Plaintiff indicated to Dr. Coker that her pain was a little better, but she was experiencing some numbness in her right hand. Tr. at 306. Dr. Coker noted

Plaintiff's blood pressure was elevated and she had a resting tremor in her right leg. *Id.* He also observed some paresthesias of Plaintiff's thumb, forefinger, and long finger on her right hand. *Id.* He indicated Plaintiff had adequate dorsiflexion and plantar flexion of her feet while standing. *Id.* Dr. Coker refilled Plaintiff's Percocet prescription and prescribed a carpal tunnel splint. *Id.*

Plaintiff saw Ezra B. Riber, M.D., on August 24, 2012, for low back and right leg pain. Tr. at 314. He noted Plaintiff was previously seen on February 17, 2012. *Id.* He indicated that since her last visit, Plaintiff had been evaluated by an orthopedist who did not recommend surgery. *Id.* Dr. Riber observed Plaintiff to have kyphotic posture; limited forward flexion of the lumbar spine; positive SLR; inability to stand on heels and toes; and grossly antalgic gait, requiring a walker to ambulate. *Id.* He diagnosed lumbar facet syndrome, lumbar radicular syndrome (right worse than left), chronic low back and leg pain (right worse than left), status post work-related lifting injury, and failure to respond to non-invasive treatment. *Id.*

On October 17, 2012, Plaintiff complained to Dr. Riber of low back pain, right upper extremity pain, and right lower extremity pain. Tr. at 310. Dr. Riber observed limited range of motion of Plaintiff's lumbar spine and right limp, but no other abnormalities. Tr. at 311. He noted that Plaintiff had an appointment for a surgical evaluation on October 22, 2012. *Id.*

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the hearing on February 23, 2012, Plaintiff testified she lived in a mobile home with her husband. Tr. at 42. She stated she had a driver's license, but she did not drive. Tr. at 43.

Plaintiff indicated that she had worked steadily since she was 16 years old, except for two years when her children were born. Tr. at 46. She stated she stopped working in August 2010 because of pain in her back and pelvic area. Tr. at 48.

Plaintiff testified that intermittent pain in her lower pelvic area radiated up and down her bilateral legs, but was worse in the right leg. Tr. at 47. She indicated her pain was aggravated by sitting for any length of time and by standing for too long, but that it was relieved by lying down. *Id.* Plaintiff stated her right leg shook. Tr. at 65. She testified that she ambulated with a cane around the time that she stopped working, but that Dr. Coker subsequently prescribed a walker. Tr. at 48–49. She stated she stood with the assistance of her walker for an hour or two at a time and reclined for "like seven hours." Tr. at 48. She stated she stood or lay down when she ate meals. Tr. at 54.

Plaintiff testified she experienced severe pain in her right shoulder and had difficulty lifting. Tr. at 49. She indicated her shoulder pain was exacerbated by bending, lifting from floor-level, and reaching. Tr. at 50–51.

Plaintiff testified that her medications included Amlodipine, HCTZ, Meloxicam, Oxycodone, Lyrica, and over-the-counter ibuprofen. Tr. at 45–46. Plaintiff stated she received injections for her back pain once or twice a month. Tr. at 51. Plaintiff indicated she did not take the narcotic medications prior to the hearing because they made her

drowsy. Tr. at 47. She also stated that her blood pressure medication made her dizzy and lightheaded. Tr. at 51.

Plaintiff testified she had been unable to see a pain management specialist to whom she was referred because her Medicaid coverage was terminated. Tr. at 52.

Plaintiff indicated she went to bed around 8:30 to 9:00 p.m. and awoke about 9:30 a.m., but that she did not sleep well because of jitteriness and panic. Tr. at 53.

Plaintiff testified that she heated her breakfast and lunch in the microwave. Tr. at 55. She stated she completed puzzles in a puzzle book and watched television. *Id.* She indicated that she helped with the household chores by folding laundry and washing dishes, but did not load or unload the dishwasher or cook meals. Tr. at 56. She testified that her husband assisted her in getting in and out of the shower and in dressing. Tr. at 56–57. She stated she went grocery shopping with her husband, but she either used her walker or sat sideways on a motorized cart. Tr. at 57. She testified she had not attended church in a year-and-a-half. Tr. at 57–58.

b.    Husband's Testimony

Plaintiff's husband, Wayne Phillips ("Mr. Phillips"), testified that he had been married to Plaintiff for seventeen years. Tr. at 59. He indicated he was a painter who painted water treatment plants. *Id.* He stated he had worked steadily over the prior six-month period, but had trouble finding work before that and was home for much of the time. *Id.* Within the prior six-month period, he typically worked from 7:00 a.m. to 8:30 p.m. *Id.*

Mr. Phillips testified Plaintiff's functioning had declined over the prior year. Tr. at 60. He stated Plaintiff's back pain had worsened, her hands were "fidgeting," and her legs were shaking. *Id.* Mr. Phillips indicated that Plaintiff stood to do light chores, but was unable to sit or to stand for long. *Id.* He stated Plaintiff would lie down after doing chores. *Id.* Mr. Phillips indicated Plaintiff always used either a cane or a walker to move about the house. Tr. at 62–63. He stated Plaintiff did not sit to eat meals, but rather stood or ate while lying in bed. Tr. at 64.

Mr. Phillips testified that Plaintiff accompanied him on trips to the grocery store and dictated the items on the list, but did not lift the groceries. Tr. at 60–61.

Mr. Phillips stated he had to assist Plaintiff with getting in and out of the tub, putting on socks, and preparing meals. Tr. at 63.

Mr. Phillips indicated Plaintiff tossed and turned during the night. Tr. at 64. He stated her right leg shook when she stood for too long. *Id.*

c.    Vocational Expert Testimony

Vocational Expert ("VE") William W. Stewart reviewed the record and testified at the hearing. Tr. at 66–74. The VE categorized Plaintiff's PRW as a janitor, *Dictionary of Occupational Title* ("*DOT*") number 381.687-014, as medium with a specific vocational preparation ("SVP") of 2; as a cook, *DOT* number 313.361-022, as medium with a SVP of 4; a kitchen helper, *DOT* number 318.687-010, as medium with a SVP of 2; as a cashier, *DOT* number 211.362-010, as light with a SVP of 3; and a produce clerk, *DOT* number 922.687-058, as medium with a SVP of 2. Tr. at 67. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could lift and/or carry 20

13

pounds occasionally and 10 pounds frequently; could stand and/or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-hour workday; needed a sit-stand option at the work station; was unlimited with respect to pushing and pulling; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid all exposure to hazards. Tr. at 70. The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified sedentary jobs with a SVP of 2 that included order clerk, *DOT* number 209.567-014, with 2,400 jobs in South Carolina and 45,000 jobs nationally; table worker, *DOT* number 739.687-182, with 3,500 jobs in South Carolina and 70,000 to 75,000 nationally; and bench hand worker, *DOT* number 734.687-018, with 2,900 jobs in South Carolina and at least 60,000 jobs nationally. Tr. at 70–71. The ALJ next asked the VE to assume a hypothetical individual of Plaintiff's vocational profile and to assume the same restrictions included in the first hypothetical except that the individual would be limited to lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. Tr. at 71. The VE asked if this hypothetical individual would be able to perform any work available in the local or national economy. *Id.* The VE testified that the hypothetical individual would be able to perform the jobs identified in response to the first hypothetical question. Tr. at 71. The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's vocational profile and to assume that individual could not lift and/or carry 10 pounds frequently or occasionally, could stand and/or walk less for than

two hours in an eight-hour workday; and could for sit less than six hours in an eight-hour workday. Tr. at 72. The ALJ asked if this individual could perform any work available in the local or national economy. *Id.* The VE indicated that there was no work that would allow for those restrictions. *Id.* Finally, the ALJ asked the VE to assume a hypothetical individual with the same vocational factors, impairments, and limitations as in the first hypothetical, but to assume that the individual was limited as stated in Plaintiff's testimony. Tr. at 72–73. The ALJ asked if this person could perform any work available in the local or national economy. Tr. at 73. The VE indicated that the individual could not maintain persistence or pace to be productive on a reliable and sustained basis. *Id.* The ALJ asked the VE if his testimony was consistent with the *DOT*, the *Selected Characteristics of Occupations* ("*SCO*"), and supporting publications. *Id.* The VE indicated that it was, except with regard to the sit-stand option, but that his testimony regarding the sit-stand option was based on his professional and clinical experience. *Id.*

Plaintiff's attorney asked the VE to assume that the individual would be unable to perform even minimal tasks and would miss more than four days a month due to illness. Tr. at 73–74. He asked the VE if such an individual would be able to perform any work activity. Tr. at 74. The VE indicated that there would be no work that would allow for those restrictions. *Id.*

 2.    The ALJ's Findings

In her decision dated June 13, 2012, the ALJ made the following findings of fact and conclusions of law:

 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since August 23, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: low back pain; pelvic pain; pain radiating down both legs; sciatica; mild facet arthropathy; hypertension (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work with the following limitations: lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; a sit/stand option at the workstation; unlimited pushing and/or pulling other than as shown for lift and/or carry; never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and avoid all exposure to hazards.

6.    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on February 10, 1971, and was 39 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

Tr. at 22–31.

## II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) The ALJ failed to explain her findings regarding Plaintiff's RFC as required by Social Security Ruling ("SSR") 96-8p;

2) The ALJ did not properly assess medical opinion evidence; and

3) The ALJ did not adequately evaluate Plaintiff's credibility.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); SSR 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is

supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Assessment of Plaintiff's RFC under SSR 96-8p and 96-9p

Plaintiff argues that the ALJ failed to explain her RFC finding in accordance with SSR 96-8p. [ECF No. 16 at 17]. Plaintiff contends that the medical evidence supports her allegations of limited ability to sit and limited ability to stand and walk without a cane or walker. [ECF No. 16 at 18]. Plaintiff maintains that SSR 96-9p requires that the ALJ specify the frequency that she would need to change positions and that the ALJ erred in not specifying how frequently she would need to alternate between sitting and standing. [ECF No. 16 at 23].

The Commissioner argues that the ALJ's RFC finding was supported by substantial evidence and that the ALJ discussed evidence in the record to support her finding that Plaintiff could sit for about six hours in an eight-hour workday. [ECF No. 18 at 5–6]. The Commissioner also maintains that the ALJ provided a sufficient explanation

for her conclusion that Plaintiff was able to stand and/or walk for at least two hours in an eight-hour workday. [ECF No. 18 at 6]. The Commissioner argues that the ALJ implied that Plaintiff could alternate sitting and standing at-will in her hypothetical and that Plaintiff did not demonstrate that her need to sit or stand would preclude her from performing the jobs identified by the VE. [ECF No. 18 at 9–10].

Pursuant to SSR 96-8p, the RFC assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." *Id.* The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule, describe the maximum amount of each work-related activity the individual can perform based upon the evidence in the case record, and resolve any material inconsistencies or ambiguities in the evidence. *Id.*

In cases in which an ALJ assesses a claimant's RFC as being for less than a full range of sedentary work, "[t]he RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." SSR 96-9p. Furthermore, "[a]n accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource." *Id.* If the claimant needs to alternate

sitting and standing and the need cannot be accommodated by scheduled breaks and a lunch period, the unskilled sedentary occupational base will be eroded and the extent of the erosion will depend on the frequency of the need to alternate sitting and standing and the length of time needed to stand. *Id.* "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.* Therefore, it may be particularly beneficial to consult a vocational expert to determine if the claimant can perform jobs in light of the limitations. *Id.*

> The ALJ made the following RFC determination:
>
> I find that, due to the claimant's mild facet arthropathy and sciatica with low back pain, pelvic pain, and lower extremity pain and her hypertension, the claimant has some functional limitations, but that she retains the ability to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday. She requires a sit/stand option at the workstation. The claimant has unlimited ability to push and/or pull other than as shown for lift and/or carry. The claimant should never climb ladders, ropes, or scaffolds; and can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to hazards.

Tr. at 28.

The undersigned recommends a finding that the ALJ's conclusions that Plaintiff could sit for a majority of a workday and stand unassisted were not supported and reconciled as required by SSR 96-8p. While the ALJ acknowledged in her decision that Plaintiff reported difficulty sitting to Dr. Coker on several occasions, the ALJ assessed a RFC that required Plaintiff sit for the majority of the workday. *See* Tr. at 26. In fact, the undersigned's review of the record reveals that Plaintiff complained of difficulty sitting to Dr. Coker on at least five separate occasions, that Dr. Coker observed that Plaintiff was

unable to sit during at least two visits, and that Plaintiff indicated that she had less pain while standing than while sitting. *See* Tr. at 258, 273, 276, 298. The ALJ also made no provision in her RFC assessment for use of an assistive device while standing where Plaintiff and her husband testified that she required a cane or walker to ambulate; she was prescribed a walker; her gait was described as antalgic; and her posture was indicated to be excessively lordotic or bent over. *See* Tr. at 48–49, 62–63, 257, 258, 272, 273, 276, 286, 297, 298. The ALJ acknowledged that Plaintiff was prescribed and used a cane and walker, but she indicated that there was no laboratory or clinical evidence of lower extremity instability and the record reflected no falls or imbalance. Tr. at 26, 28. Nevertheless, she did not explicitly conclude that Plaintiff did not require a cane or walker, and she did not address the evidence that suggested otherwise. Therefore, the ALJ failed to address Plaintiff's abilities to sit and to stand unassisted as required by SSR 96-8p.

The undersigned further recommends a finding that the ALJ neglected to assess Plaintiff's abilities to sit and to stand as required by SSR 96-9p. This court has recently considered several cases addressing the specificity required by SSR 96-9p when including a sit-stand option in the RFC assessment and has emphasized that SSR 96-9p requires that the ALJ "include the length of time a claimant must stand in exercising a sit-stand option." *Bryant v. Colvin*, No. 1:13-1994-DCN, 2014 WL 3670842, at \*14 n.4 (D.S.C. July 22, 2014) (holding that the ALJ's determination that the plaintiff would need to alternate positions every 45 to 60 minutes met the specificity requirements of SSR 96-9p); *see also Sumter v. Colvin*, No. 5:12-2223-RMG, 2014 WL 508365, at \*5 (D.S.C.

Feb. 6, 2014) (finding that ALJ's determination that claimant would need to alternate sitting and standing each hour was deficient because it did not reference the length of time the claimant would need to stand); *Proctor v. Astrue*, No. 5:11-311-JFA-KDW, 2012 WL 3843959, at *2 (D.S.C. Sept. 5, 2012) (holding that the ALJ failed to comply with the requirements of SSR 96-9p where there was no explanation of the limits imposed by the sit-stand option or whether it was at-will). Here, the ALJ did not specify the length of time that Plaintiff could sit, the length of time that she could stand, or whether her ability to alternate sitting and standing was at-will. Based on this court's interpretation of the requirements of SSR 96-9p in *Bryant*, *Sumter*, and *Proctor*, the undersigned recommends a finding that the ALJ's RFC assessment lacked the specificity required by SSR 96-9p with regard to the sit-stand option.

### 2.     Medical Opinion Evidence

Dr. Coker provided a statement on February 8, 2012, in which he specified that Plaintiff had been diagnosed with low back pain, sciatica, and sacroiilitis. Tr. at 300. He indicated that Plaintiff's complaints were frequent and severe enough to preclude even sedentary work on a full-time basis. *Id.* He maintained that his opinion was supported by findings of chronic low back pain, Plaintiff's inability to sit or lie down, her inability to stand or walk without a cane or walker, and an abnormal x-ray. *Id.* Dr. Coker claimed that Plaintiff was "unable to perform even minimal tasks given her pain." Tr. at 301. He further indicated "[s]he has demonstrated a slow, painful gait and difficulty with simple maneuvers during each examination." *Id.* He stated "I doubt that she would be able to maintain employment given the severity of her symptoms." *Id.* Finally, he indicated that

Plaintiff would likely have been absent from work more than four days per month if she were employed during the period that he treated her. *Id.*

Plaintiff argues that Dr. Coker's opinion and statements are supported by the medical evidence and should have been accorded greater weight. [ECF No. 16 at 28]. Plaintiff contends that the ALJ failed to comply with the directives of SSR 96-2p and 96-5p when she assigned greater weight to the opinions of non-treating, non-examining medical sources than to the opinion of her treating physician. [ECF No. 16 at 29].

The Commissioner argues that the ALJ properly assessed the opinion evidence. [ECF No. 18 at 10]. The Commissioner contends that the ALJ considered Dr. Coker's records in combination with the mild clinical findings and Plaintiff's daily activities before concluding that his opinion was inconsistent with his treatment notes. [ECF No. 18 at 12–13]. The Commissioner maintains that Dr. Coker's opinion that Plaintiff was unable to perform sedentary work was an opinion on an issue reserved to the Commissioner and was not entitled to controlling weight or special significance. [ECF No. 18 at 15]. Finally, the Commissioner argues that the ALJ properly evaluated the opinions from the state agency consultants and gave them considerable weight because they were consistent with the record. [ECF No. 18 at 15–16].

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p *quoting* 20 C.F.R. §§ 404.1527(a) and 416.927(a). If a treating source's medical opinion is "well-

supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record).

"Opinions that you are disabled" are among those reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also* SSR 96-5p. "Opinions on some issues . . . are not medical opinions, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Thompson v. Astrue*, 442 Fed. Appx. 804, 808 (4th Cir. 2011) *quoting* 20 C.F.R. §§ 404.1527(e), 416.927(e). Such opinions are not afforded any special significance. *Id.; see also* SSR 96-5p.

However, social security's rules require that the ALJ carefully consider medical source opinions regarding all issues, including those issues reserved to the Commissioner. SSR 96-5p. Pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c), if a treating source's opinion is not accorded controlling weight, the ALJ should consider "all of the following factors" to determine the weight to be accorded to the medical opinion: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors. *See also Johnson*, 434 F.3d at 654.

Pursuant to SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

The ALJ explained that she considered Dr. Coker's opinion but gave it little weight based on the clinical findings that she discussed earlier in her decision, mild laboratory findings, Plaintiff's daily activities, her possible drug-seeking behavior, and her failure to follow recommended treatment. Tr. at 29.

The undersigned recommends a finding that the ALJ failed to adequately consider Dr. Coker's opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-2p. Dr. Coker's opinions that Plaintiff's complaints were severe enough to preclude even sedentary work on a full-time basis and that she could not maintain employment addressed an issue reserved to the Commissioner because, if accepted, they would be dispositive of the claim. However, other aspects of Dr. Coker's opinion were medical opinions consistent with those defined in 20 C.F.R. §§ 404.1527(a) and 416.927(a). Dr. Coker specified Plaintiff's diagnoses and the limitations that he observed. Tr. at 300–01. He also based his opinion on diagnostic test results. Tr. at 300. Therefore, the ALJ's decision not to accord Dr. Coker's opinion controlling weight is not justified merely by concluding that Dr. Coker provided an opinion on an issue reserved to the Commissioner. Because Dr. Coker provided a medical opinion, the analysis shifts to an examination of whether Dr. Coker's opinion was well-supported and not inconsistent with the other substantial evidence in the case record. The ALJ concluded that it was not,

and provided reasons for her conclusion. Tr. at 29. The undersigned defers to the ALJ on the issue of controlling weight because she justified her conclusion with supporting evidence from the record.

Although the ALJ provided sufficient justification for determining that Dr. Coker's opinion was not entitled to controlling weight, his opinion was still entitled to deference as the opinion of Plaintiff's treating medical source. Dr. Coker's opinion was required to be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In summarizing Plaintiff's visits with Dr. Coker, the ALJ addressed the examining relationship and the treatment relationship to some extent. *See* Tr. at 25–27. She also identified perceived inconsistencies between Dr. Coker's opinion and the other evidence in the record. *See* Tr. at 28 ("[a]n MRI of the lumbar spine showed only mild degenerative changes and mild facet arthropathy;" "no laboratory or clinical evidence that established that the claimant had findings that resulted in lower extremity instability;" no "episodes of falling or imbalance;" "no sensory, reflex or motor loss; neurological deficits; or muscle atrophy or dystrophy;" and no pain management, physical therapy, surgery, or specialized treatment). However, the ALJ failed to address the supportability of Dr. Coker's opinion. The undersigned's review of Dr. Coker's records reveals that they were consistent with his opinion. Dr. Coker's notes reflect that he observed Plaintiff's pain-related behavior on numerous occasions. *See* Tr. at 258 (uncomfortable, standing, and bending at the waist), 272 ("in a significant amount of pain"), 273 ("quite uncomfortable in the sitting position"), 276 ("unable to sit down for any significant amount of time" and flexed between "30 and 45 degrees at the hip"), and

304 ("appears to be in pain consistent with level documented"). He also documented multiple objective findings that supported his opinion, including positive SLR, excessive lordosis, antalgic gait, tenderness, and hyperreflexia. *See* Tr. at 257, 258, 261, 272, 273, 276, 297, 298, 304, 306. Pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c) and SSR 96-2p, all of the factors must be considered. Therefore, the ALJ erred in failing to address the supportability of Dr. Coker's opinion.

### 3.    Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly assess her credibility. [ECF No. 16 at 30]. Plaintiff contends that the ALJ violated the provisions of SSR 96-7p by ignoring part of her testimony, failing to mention relevant observations, failing to discuss her husband's testimony, neglecting to acknowledge her difficulties in getting dressed, and overlooking the side effects of her medications. [ECF No. 16 at 31]. Plaintiff disputes the ALJ's conclusion that she engaged in drug-seeking behavior and maintains that there is no evidence to support that conclusion. [ECF No. 16 at 32]. Plaintiff argues that the ALJ failed to make the findings necessary to support her conclusion that Plaintiff failed to follow recommended treatment. *Id.* Finally, Plaintiff submits that the ALJ erred in failing to consider her work history. [ECF No. 16 at 33].

The Commissioner argues that the ALJ properly assessed Plaintiff's credibility. [ECF No. 18 at 16]. The Commissioner submits that the ALJ considered Plaintiff's daily activities. [ECF No. 18 at 17]. The Commissioner concedes that the ALJ failed to consider Plaintiff's work history, but argues that this was harmless error because she

discussed substantial evidence in support of her credibility determination. [ECF No. 18 at 18].

SSR 96-7p provides the following guidance to ALJs tasked with assessing the credibility of claimants' statements:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of the objective medical evidence.
>
> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

The provisions of 20 C.F.R. §§ 404.1529(c) and 416.929(c) set forth the following factors that the ALJ must consider in addition to the objective evidence when assessing a claimant's credibility:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate or aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

The ALJ indicated the following: "I find that the claimant has medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible." Tr. at 27.

To support her credibility determination, the ALJ cited an MRI of Plaintiff's lumbar spine; a lack of laboratory or clinical evidence of lower extremity instability; a lack of evidence regarding falls or imbalance; a lack of evidence of sensory loss, reflex loss, motor loss, neurological deficits, muscle atrophy, or muscle dystrophy; possible drug-seeking behavior; noncompliance with referrals to a pain management physician and a neurologist; a lack of pain management, physical therapy, surgery, or specialized treatment; and failure to follow prescribed treatment. Tr. at 28.

The undersigned recommends a finding that the ALJ failed to consider the entire case record as required by SSR 96-7 in assessing Plaintiff's credibility. The undersigned's review of the record reveals that the ALJ cited all of the factors set forth in

20 C.F.R. §§ 404.1529(c) and 416.929(c) in her decision. However, SSR 96-7p indicates that merely citing the factors does not equate to considering them. While the ALJ indicated that Plaintiff alleged that her medications caused drowsiness and dizziness, she declined to address these limitations even though similar complaints were documented in Dr. Coker's records. *See* Tr. at 273, 304. The ALJ also failed to consider the entire case record when she concluded that Plaintiff was engaged in drug-seeking behavior based upon an incident in which she informed Dr. Coker that she dropped her medication into the toilet, two visits to the urgent care center while treating with Dr. Coker, and a request for a specific medication. *See* Tr. at 28. She neglected to address that no physicians had accused Plaintiff of drug-seeking and that the physicians' observations were consistent with Plaintiff's complaints of pain. *See* Tr. at 257, 258, 261, 272, 273, 276, 293, 286, 297, 298, 304, 306. The ALJ failed to consider Plaintiff's testimony that she could stand for longer than she could sit and the evidence in the record that supported this limitation. *See* Tr. at 47, 258, 273, 276, 298. She ignored Plaintiff's husband's testimony regarding her limitations and the assistance that he had to provide to her. *See* Tr. at 60–64. She overlooked the reasons for Plaintiff's failure to obtain treatment where the record suggested that Plaintiff was unable to obtain specialized treatment due to a lack of insurance and where Plaintiff was consulting with an attorney to determine if there was possible coverage under Workers' Compensation. *See* Tr. at 276, 297, 305. The ALJ also ignored Plaintiff's work history where Plaintiff testified that she had worked consistently since age 16, except for two brief periods when her children were born. *See* Tr. at 46. In

light of the ALJ's failure to consider the entire case record in determining Plaintiff's credibility, it is necessary for the ALJ to reassess her credibility on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

October 20, 2014                                     Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).